IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Paresh Shah, M.D., and Paresh Shah, M.D., P.A. | ) ) C/A NO. 3:06-2283-CMC |
| | ) |
| Plaintiffs, | ) |
| | ) **ORDER OF REMAND** |
| v. | ) |
| | ) |
| Palmetto Health Alliance d/b/a Palmetto Richland Memorial Hospital, *et al.*, | ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the court on Plaintiffs' motion to remand this action to the court of Common Pleas for Richland County, South Carolina. Having fully considered all memoranda, the court concludes that the matter was properly removed. Nonetheless, in light of post-removal amendment of the complaint to eliminate the federal claim as well as additional circumstances addressed below, the court concludes that the matter should be remanded pursuant to 28 U.S.C. § 1367(c)(3).

## STANDARD

As the parties invoking the court's jurisdiction, Defendants bear the burden of establishing that this case was properly removed. *See Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *Bennett v. Bally Mfg. Corp.*, 785 F. Supp. 559, 560 (D.S.C. 1992). The removal statute is to be strictly construed and doubts resolved in favor of remanding the case to state court. *See Mulcahey*, 29 F.3d at 151; *McGraw v. FD Servs., Inc.*, 811 F. Supp. 222, 223 (D.S.C. 1993).

Even when removal is proper, the court may, under certain circumstances, decline to exercise jurisdiction over claims which are before the court pursuant to the supplemental jurisdiction authority granted by 28 U.S.C. § 1367(a). For example, the court may, in its discretion, decline to exercise

supplemental jurisdiction over remaining claims if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

## BACKGROUND

This action was filed in the state court on July 13, 2006.  The original eighty-three page complaint ("Original Complaint") sought recovery against fifty-two Defendants, including Palmetto Health Alliance ("PHA") and  a number of administrators, doctors, and other individuals associated with PHA.  The allegations related to disciplinary and other actions taken against Plaintiff Paresh Shah, M.D., which have allegedly caused injury both to Dr. Shah and to the legal entity through which he conducts his practice, Paresh Shah, M.D., P.A. (collectively "Plaintiffs").

Plaintiffs alleged, *inter alia,* that Defendants violated the terms of a settlement agreement reached in an earlier state court action between Plaintiffs and PHA.  That agreement was incorporated into a state court consent order.  The state court, therefore, retains jurisdiction to enforce the terms of the settlement agreement and has, in fact, become involved in enforcement since entry of the consent order.  Indeed, there are motions relating to enforcement of the consent order which are currently pending in state court.[1]

In their Original Complaint, Plaintiffs asserted the following causes of action (asserted against all Defendants unless otherwise indicated): (1) Civil Compensatory Contempt (alleging violation of consent order entered in settlement of earlier state court action); (2) Violation of Due Process Rights (expressly referencing the "Fifth and Fourteenth Amendments to the United States Constitution"); (3) Breach of Contract (asserted solely against PHA); (4) Tortious Interference with Contract

---

[1] Prior to filing the present action, Plaintiffs filed contempt motions in state court relating to the consent order.  Those motions remain pending.

(asserted against all individual Defendants); (5) Defamation - Slander *per se* (asserted against a single individual Defendant); (6) Intentional Infliction of Emotional Distress; (7) Civil Conspiracy; and (7) Negligence (asserted against the members of the board of directors of PHA).   Thus, six of the seven claims expressly rest on state law while one (second cause of action alleging federal due process violation) rests on federal law.

Plaintiffs also refer to the Health Care Quality Improvement Act, 42 U.S.C. § 11101 *et. seq.* ("HCQIA")  within the preliminary paragraphs of the Original Complaint.  *See* Original Complaint ¶¶ 262-288 (preliminary paragraphs addressing presumptive immunity under the HCQIA and alleging that Defendants are not entitled to that protection because they have engaged in malicious acts). Plaintiffs also refer to the HCQIA within the allegations specific to at least one cause of action.  *See* Original Complaint ¶ 384 (alleging under conspiracy claim that Defendants' actions were "without justification and without compliance with the HCQIA").  Plaintiffs do not, however, purport to assert any claim based on the HCQIA.

Defendants removed this action on August 14, 2006, and filed a motion to dismiss on September 11, 2006.  Dkt No. 1 & 10.  The Original Complaint remained the operative complaint on both dates.  Plaintiffs filed their motion to remand on September 12, 2006,  the day after the motion to dismiss was filed.  Dkt No. 11.  In their memorandum in support of remand, Plaintiffs acknowledged that their second cause of action, for federal due process violations, failed to "state a substantial or meritorious federal question" because all Defendants are non-governmental parties. Dkt No. 11, Memorandum at 4.  Plaintiffs, thereafter, filed an Amended Complaint which deleted the federal due process claim, leaving only state law claims. Dkt No. 21. The Amended Complaint was filed as of right, before Defendants answered.

## DISCUSSION

**Removal.** In deciding the propriety of removal, the court considers the complaint as it existed at the time of removal. *Pinney v. Nokia, Inc.*, 402 F.3d 430, 443 (4th Cir. 2005) ("Because amendment occurred after removal, we look at the original complaints rather than the amended complaints in determining whether removal was proper." *Citing Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939).). That complaint (the Original Complaint) expressly stated a federal claim, albeit one which rested on a false factual assumption–that one or more Defendants were "state actors."

In this respect, the present action differs from *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811 (4th Cir. 2004). In *Dixon*, plaintiff referred to the First Amendment to the United States Constitution in one of his causes of action but did not expressly state a federal constitutional claim. Nonetheless, the *Dixon* court acknowledged that a facially defective claim could be disregarded in determining whether removal was proper. *Id.* at 817 n.5 ( "To the extent [the] complaint can be interpreted as stating a cause of action based directly on the First Amendment, such a claim would be too insubstantial to invoke federal question jurisdiction because the First Amendment does not apply to private employers."), *See also Hagans v. Lavine*, 415 U.S. 528, 536-37(1974) (quoted in *Dixon* as follows: "[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." Internal quotation marks and citations omitted).

In the present case, it is not clear from the face of the complaint whether Defendant PHA is a private or governmental entity. Only with this additional information is it clear that the federal

4

claim cannot survive.  Therefore, although this claim was doomed to early dismissal, its factually

defective foundation did not invalidate the initial removal.

**Effect of Post-Removal Amendment.**  As noted above, Plaintiffs acknowledged the factually

defective basis for their federal (due process) claim in their motion to remand.  They subsequently

filed the Amended Complaint which set forth only state law claims.  To the extent the HCQIA is

referenced in the Amended Complaint or may be implicated by it, it is only as an anticipated defense.

The HCQIA may not, therefore, be considered under the well-pleaded complaint rule.  *See Franchise*

*Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 14 (1983) (finding it is well settled

"that a case may not be removed to federal court on the basis of a federal defense, including the

defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both

parties admit that the defense is the only question truly at issue in the case"); *Pinney*, 402 F.3d at 443

(discussing *Franchise Tax Board*); *Dixon*, 369 F.3d at 818 n. 6 ("Because conflict preemption is a

defense to a cause of action, the well-pleaded complaint rule bars its use as a foundation for federal

question jurisdiction." *Citing Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366,

371 (4th Cir.2003).)

Further, Plaintiffs' complaint cannot be read to imply a federal claim based on its references

to the HCQIA.  As addressed in numerous cases, there is neither an express nor an implied right of

action under the HCQIA which might apply to Plaintiffs' claims.  *See, e.g., Bok v. Mutual Assur.,*

*Inc.*, 119 F.3d 927 (11th Cir. 1997) (following the Tenth Circuit (*Hancock–infra*) in finding

physician who alleged injury as a result of a review had neither an express nor an implied cause of

action under the HCQIA); *Hancock v. Blue Cross-Blue Shield of Kansas,* 21 F.3d 373 (10th Cir.

1994) (applying four factor test set forth in  *Cort v. Ash,* 422 U.S. 66, 78 (1975), in finding physician

who alleged injury as a result of a review had no implied cause of action under the HCQIA). Federal subject matter jurisdiction cannot, therefore, rest on an implied claim under the HCQIA. *See Held v. Decatur Memorial Hospital,* 16 F. Supp. 2d 975 (C.D. Ill. 1998) (dismissing action for lack of subject matter jurisdiction where plaintiff-physician's federal claim rested on alleged violations of the HCQIA); *Goldsmith v. Harding Hospital*, *Inc.,* 762 F. Supp. 187 (S.D. Ohio 1991) (dismissing action for lack of subject matter jurisdiction where plaintiff-physician alleged that defendant violated his rights under the HCQIA in suspending his participation in a residency program).

The United States Supreme Court's more recent decision in *Grable & Sons Metal Products, Inc.,* v. *Darue Engineering & Mfg*., does not compel a different result. *See Grable,* 545 U.S. 308 (2005) (addressing standard for finding federal jurisdiction where a state law claim raises a substantial question of federal law). As noted in *Grable*, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Here, the federal issue arises only as a potential defense (not as an element of any claim). Moreover, finding the anticipated HCQIA defense to support subject matter jurisdiction would "herald[] a a potentially enormous shift of traditionally state cases into federal courts" because it would provide for federal jurisdiction over a type of action otherwise handled by the state courts (disputes relating to medical provider peer reviews where there is no diversity and only state law claims are alleged). *Id.* at 319 (noting Court had previously declined to find federal subject matter jurisdiction based on federal issue inherent in state law claim where to do so would cause such a shift –discussing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986)). *See also Empire HealthChoice Assur., Inc., v. McVeigh,* 126 S. Ct. 2121 (2006)

6

(distinguishing *Grable* and finding no federal subject matter jurisdiction in case involving "insurer's contract-derived claim to be reimbursed from proceeds of a federal worker's state-court-initiated tort litigation")[2]; *Dixon* and *Pinney* (pre *Grable* cases finding no federal question jurisdiction over state law claims under circumstances comparable to those presented in this action).

**Discretionary Remand.** For the reasons discussed in the preceding section, this court finds that there are no federal claims pled or implied in the Amended Complaint. Thus, all "claims over which [the court] has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3). The court must, therefore, decide whether to exercise its discretion to retain jurisdiction over the remaining claims. *Id.*

> The exercise of discretion in these circumstances involves two overlapping decisions . . . whether to continue exercising federal jurisdiction over pendent claims and whether to remand the case to State court. Section 1337(c) lists factors to inform the decision of whether to exercise federal jurisdiction over pendent State claims, such as whether the State claims involve novel or complex issues of State law; whether the State law claims predominate; whether the federal claims justifying the court's jurisdiction remains [sic] in the case; or other compelling reasons. And when the exercise of this discretion involves the additional question of whether to remand the case to State court, the federal court should consider "principles of economy, convenience, fairness, and comity" and whether the efforts of a party in seeking remand amount to a "manipulative tactic."

*Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 617-18 (4th Cir. 2001) (internal citation omitted).

---

[2] Among other distinctions, the Court noted that the dispute in *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *McVeigh*, 126 S.Ct. at 2137 (also noting *Grable* presented a "nearly pure issue of law" that could be "settled once and for all and thereafter would govern numerous tax sale cases" – internal citation omitted). By contrast, the issues in *McVeigh* did not involve the actions of a federal agency and were fact and case specific, *id.* at 2137, even though resolution would require interpretation of rules applicable to a "comprehensive federal health insurance program created by federal statute and applicable to numerous federal employees, *Id.* at 2138 (dissent).

In *Hinson,* the court found that the above factors favored remand because "[t]he federal claim . . . had been disposed of by settlement, . . . State claims predominated, [and] the State claims involved interpretations of complex [State] statutes on which there was no State precedent." The court further found that these facts "implicate[d] the overriding issues of fairness and comity." *Id.* at 617-18. Similarly, in the present case, state law claims have always predominated and the only federal claim pled was promptly and voluntarily dismissed based on a conceded lack of factual support.

The state law claims that remain in this case may not involve complex state statutes. They do, however, involve enforcement and interpretation of a settlement agreement which was incorporated into a state court consent order. That order remains subject to state court enforcement. The issues in this action (particularly the contempt claim) also overlap with motions which are currently pending in state court. Thus, issues of entanglement and comity are presented. Further, while Plaintiffs' inclusion of the federal claim may have been unwarranted in the first instance, there is no evidence that Plaintiffs have engaged in manipulative tactics in relation to the jurisdictional issue.

This action is also in its infancy in this court. By contrast, the state court has managed related litigation between the parties for a number of years. It appears, moreover, that the state court action was at one time assigned to and managed by a single judge. Presumably, this action, if remanded, could be assigned to the same judge. Whether to do so would, of course, be for the state court to decide.

Under these circumstances, the court finds that remanding the matter to state court would avoid undue risk of conflicting rulings or interference by this court in state court proceedings.

8

Likewise, remand is in the interest of judicial economy in light of the state court's greater familiarity with the underlying issues and the early stages of the proceeding in this court. The court, therefore, concludes that this matter should be remanded to the state court pursuant to 28 U.S.C. § 1367(c)(3).[3]

## CONCLUSION

For the reasons set forth above, the court finds that the initial removal was proper but remands the action to state court pursuant to 28 U.S.C. § 1367(c)(3). In light of the propriety of the initial removal, the court declines to award attorneys' fees or costs to Plaintiffs.

The motion to dismiss is denied without prejudice to refiling under the applicable rules of the state court.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
November 3, 2006

---

[3] Defendants rely on *Weiters v. Roper Hosp., Inc.,* 58 Fed Appx. 40 (4th Cir. 2003), in arguing that this court should retain jurisdiction over this action. In *Weiters*, the Fourth Circuit found that the trial court did not abuse its discretion in retaining jurisdiction, after dismissal of all federal claims, over a case in which defendants raised an HCQIA defense. Nothing in *Weiters*, however, suggests that a contrary decision would have been an abuse of discretion under the circumstances facing that court. Likewise, there is no suggestion in *Weiters* of prior or ongoing state-court involvement in the controversy which might raise the type of comity, entanglement, and judicial economy concerns present in this action.